ORDERED.

Dated: September 02, 2020

*Jerry A. Funk*
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

IN RE:

MARC L. JORDAN,

    Debtor.

_____/

Chapter 11

Case No.    3:19-bk-0725-JAF

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This case came before the Court on the Motion for Order Directing Johnny Tillery to Show Cause Why He Should Not Be Held in Contempt for Failure to Comply with Turnover Order of Property of the Estate (the "Contempt Motion"), filed by Debtor MARC L. JORDAN ("Debtor"). (Doc. 176). JOHNNY TILLERY ("Tillery") filed a response and supplement response in opposition to the Contempt Motion. (Docs. 184 & 188). A trial was held on June 9, 2020. (Doc. 229). Based on the argument and evidence presented, the Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

In March 2019, Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code. Debtor is a licensed attorney. In 2015, Debtor represented Tillery in a personal injury lawsuit

pursuant to a contingency-fee arrangement.  Debtor negotiated a $50,000.00 settlement on behalf of Tillery.  Pursuant to the contingency-fee agreement, Debtor was entitled to received 25% of the settlement, or $12,500.00.  On October 31, 2019, the Court entered an order directing Tillery to turn over $12,500.00 as property of the estate (the "Turnover Order").  (Doc. 159).  The Court intended for the $12,500.00 to come from the settlement proceeds because the amount owed was based on the gross recovery in the personal-injury lawsuit.

The settlement proceeds were to be paid by Progressive Insurance Company ("Progressive").  However, Progressive has withheld the settlement proceeds due to outstanding Medicare claims in the amount of $65,000.00.  The Court finds it unlikely that all of the Medicare claims are related to the accident that was the subject of the personal injury suit.  Progressive refuses to disburse the proceeds until a Medicare release is obtained.  Debtor asks that Tillery be held in contempt for his failure to comply with the Turnover Order.  Debtor contends the claims can be "negotiated down" and that Tillery is trying to delay compliance.  Tillery contends he is unable to comply due to Progressive 's refusal to disburse the settlement proceeds.

## CONCLUSIONS OF LAW

It has been said that "Medicare liens disrupt personal injury settlements."  1 Handling Motor Vehicle Accident Cases 2d § 6B:1 (Sept. 2019).  A Medicare lien arises pursuant to the Medicare Secondary Payer Act.  Id.  "Medicare's claim comes into existence by operation of law when a third-party payer has made payment for medical expenses that Medicare conditionally paid for."  1 Handling Motor Vehicle Accident Cases 2d § 6B:2 (Sept. 2019).  Put differently, the lien exists on any proceeds paid to a Medicare beneficiary (Tillery) by a third party (Progressive) for medical expenses originally paid by Medicare.  Id.

Medicare generally will not make a "final" demand until after a settlement (or other right to payment, such as a judgment) has been reached between the tortfeasor and the injured party. Id. Further, Medicare only retains a lien on proceeds for Medicare claims related to the accident covered by the subject settlement/judgment. See id. Most importantly, "federal law does not mandate that a primary payer (or insurer) make payment directly to Medicare; however, an insurer may be liable to Medicare if the beneficiary/payee does not reimburse Medicare for any amounts owed to Medicare within sixty (60) days." Tomlinson v. Landers, 2009 WL 10671205, at *5 (M.D. Fla. Apr. 27, 2009) (citing 42 C.F.R. § 411.24(h), (i)(1)-(2)).

Thus, primary payers such as Progressive will sometimes refuse to disburse liability settlement proceeds until a Medicare release has been obtained. Other insurers may release settlement proceeds in exchange for an agreement from the injured party and the injured party's law firm to hold the insurer harmless against any Medicare actions filed against the insurer. However, refusal to rely on a hold-harmless promise is certainly permissible and reasonable.

Here, it is reasonable for Progressive to refuse to disburse the settlement proceeds until Tillery's Medicare claims *related to the subject accident* are paid and released. The problem is that Debtor, as Tillery's representative in the personal injury action, would normally identify which conditional payments made by Medicare are related to the subject occurrence. In so doing, Debtor would ensure that Medicare received only the portion of the settlement proceeds to which it was actually entitled. This would simultaneously maximize Tillery's net recovery and ensure that Debtor received the compensation to which he was entitled for his representation of Tillery. However, under the present circumstances, Debtor is adverse to Tillery, and Debtor has been cut out of the Medicare lien negotiation/payment process. This fact creates a precarious situation.

It is not clear if Tillery (and his current counsel) have received a final demand letter from Medicare. If Tillery has not begun the process of obtaining a final demand, he is woefully behind in the process. Tillery (and his counsel) shall endeavor to obtain a final demand from Medicare immediately. Tillery shall ensure that only conditional payments related to the subject accident are included therein. Once a final demand is received, Tillery shall pay that demand in accordance with applicable law and obtain a release from Medicare that will allow Progressive to disburse the settlement proceeds to Tillery's counsel.

Once the proceeds are obtained, Tillery's counsel shall take $12,500.00 from the proceeds and turn over that amount to Debtor in accordance with the Turnover Order. Finally, Tillery's obligation to pay $12,500.00 to Debtor remains outstanding irrespective of Tillery's net recovery from Progressive. Thus, it behooves Tillery and his counsel to earnestly negotiate Medicare's final demand. The Court will enter a separate order consistent with these Findings of Fact and Conclusions of Law.

Clerk's Office to Serve